## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES FIRE INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **No. 23-1723** |
| **J. TERRELL BROWN, SR. ET AL.** | **SECTION I** |

### ORDER & REASONS

Before the Court is a motion[1] to dismiss for *forum non conveniens* filed by defendants J. Terrell Brown, Jr., J. Terrell Brown, Sr., Horseshoe Investments, LLC, and John T. Brown Development, LLC (collectively, the "Brown Group"). Defendants Brad L. Dutruch and Sewer Hawk, LLC (collectively, the "Dutruch Group"),[2] Lauren D. Field, Robert D. Field, Jr., and Hawk RDF, LLC,[3] and Rodney K. James[4] ("James") join in the Brown Group's motion to dismiss.

Also before the Court is a motion[5] to dismiss for *forum non conveniens* and lack of subject matter jurisdiction or, alternatively, a motion[6] to strike certain allegations from the plaintiff's pleadings, filed by the Dutruch Group. James joins in that motion.[7]

---

[1] R. Doc. No. 16.
[2] R. Doc. No. 13, at 1.
[3] R. Doc. No. 20 (order granting motion for joinder).
[4] R. Doc. No. 36 (order granting motion for joinder).
[5] R. Doc. No. 13.
[6] *Id.*
[7] R. Doc. No. 36 (order granting motion for joinder).

The plaintiff, United States Fire Insurance Company, operating under the registered trademark "Crum & Forster" ("C&F"), opposes[8] both motions. For the reasons below, the Court denies the motions.

## I.    BACKGROUND

This case arises from the alleged default of two Louisiana Department of Transportation and Development ("LADOTD") projects known as "LA 10" and "LA 12."[9] TL Hawk, LLC ("TL Hawk"), a defendant in this matter, served as the general contractor for these projects, and the plaintiff, C&F, served as TL Hawk's bonding company.[10]

On December 19, 2019, the defendants—TL Hawk, J. Terrell Brown, Sr., J. Terrell Brown, Jr., John T. Brown Development, LLC, Brad Dutruch, Sewer Hawk, LLC, Hawk Industries Holding Company, LLC, Hawk Industries Holding Company, LLC, TL Hawk, LLC, TL Hawk Industrial, LLC, Hawk RDF, LLC, Hawk RKJ, LLC, Lauren D. Field, Rodney K. James, and Robert D. Field, Jr. (collectively, the "Indemnitors")—executed a General Collateral & Indemnity Agreement[11] ("Indemnity Agreement") in favor of C&F. The Indemnity Agreement provided that C&F would issue payment and performance bonds on behalf of TL Hawk in exchange

---

[8] R. Doc. Nos. 21 (response to Brown Group's motion, R. Doc. No. 16) and 22 (response to Dutruch Group's motion, R. Doc. No. 13).

[9] This section provides background information drawn from undisputed statements in the plaintiff's complaint, the parties' memoranda, and the exhibits.

[10] "In order to bid on LADOTD contracts, TL Hawk was required to have bonds in place." R. Doc. No. 16, at 2.

[11] R. Doc. No. 1-3.

for promises that the Indemnitors would collateralize C&F if a claim should be made on any bond.[12]

Pursuant to the Indemnity Agreement, the Indemnitors agreed to "exonerate, defend, indemnify, keep indemnified and hold harmless [C&F] from and against any and all Loss."[13] Section 2 of the Agreement defines "Loss" as "all demands, liabilities, losses, costs, damages and expenses of any kind or nature . . . which [C&F] incurs, or to which it may be exposed, in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of: (i) [C&F]'s having executed any Bond[.]"[14] Section 2 defines "Bond" as "any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which [C&F] has executed or procured . . . , issued for or on behalf of any one or more of Indemnitors[.]"[15] Section 2 also defines "Contract" as "any agreement of, or undertaking by, any Indemnitor, the performance of which is bonded by [C&F] and all Modifications thereof," including "any contract or obligation, the performance of which is guaranteed or covered either in whole or in part under a Bond."[16]

The Indemnitors must, "upon written request of [C&F], promptly procure the full and complete discharge of [C&F] from any and all Bonds specified in such request and all potential liability by reason of such Bonds. If such full and complete discharge

---

[12] *See generally id.*
[13] *Id.* § 5.
[14] *Id.* § 2.
[15] *Id.*
[16] *Id.*

is unattainable, the Indemnitors shall, if requested by [C&F], within five (5) business days, deposit with [C&F] a sum of money, as collateral security, in an amount [C&F], in its sole and absolute discretion, deems necessary at the time of said demand to protect [C&F] from actual or anticipated Loss."[17] The Indemnity Agreement further provides:

> The Indemnitors acknowledge and agree that their failure to immediately deposit with [C&F] any sums demanded under this section shall cause irreparable harm to [C&F] for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that [C&F] is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary.[18]

Additionally, the Indemnity Agreement states that "[t]he Indemnitors submit to the jurisdiction of the state and federal courts situated in New York, waiving any defenses of lack of personal jurisdiction and waiving venue arguments, including forum non conveniens, in any action brought by [C&F] in the State of New York."[19] Moreover, "[C&F] reserves the right to bring an action in any state . . . where a project covered by a Bond subject to this Agreement is located . . . and Indemnitors agree to submit to the jurisdiction of the courts in such state."[20] Finally, the Indemnity Agreement "shall be governed by the laws of the State of New York, without regard to conflicts of laws principles."[21]

---

[17] *Id.* § 6.
[18] *Id.*
[19] *Id.* § 17.
[20] *Id.*
[21] *Id.*

After the execution of the Indemnity Agreement, TL Hawk entered into seven contracts with the LADOTD for projects involving the construction and improvement of certain bridges in Louisiana.[22] The projects included LA 10, LA 20, LA 16 Amite River Bridge, US 84 UP Railroad Overpass, LA 75 Bayou Breaux Bridge, LA 106 Bayou Boeuf Bridge, and Hwy 41 Spur Bridge over Gum Creek.[23] C&F then issued payment and performance bonds in connection with each of these seven projects.[24] The LADOTD was named the obligee on each of the Bonds and TL Hawk was named the principal.[25]

On March 2, 2023, the LADOTD notified TL Hawk and C&F that TL Hawk had defaulted on its obligations to perform work in accordance with the requirements of the contract documents for two of the seven projects: the LA 10 and LA 20 Project.[26] The LADOTD instructed C&F to complete the work for both projects and cure the conditions of TL Hawk's default.[27] C&F also alleges that, on March 30, 2023, the LADOTD informed certain Indemnitors and C&F that several of TL Hawk's subcontractors had made payment claims for all seven projects.[28]

C&F subsequently sent the Indemnitors a letter[29] on March 28, 2023, demanding that they provide C&F with updated financial statements by April 4,

---

[22] R. Doc. Nos. 3-3–3-9.
[23] R. Doc. No. 1, ¶ 27.
[24] *Id.* ¶ 28.
[25] R. Doc. No. 16-1, at 2.
[26] R. Doc. Nos. 3-10 and 3-11.
[27] R. Doc. No. 3-1, at 6.
[28] *Id.*
[29] R. Doc. No. 3-13.

2023. According to C&F, the Indemnitors "either ignored [C&F's] April 4th deadline or . . . requested a time extension until April 14th, 2023." The Indemnitors allegedly failed to provide C&F with updated financial statements by this extended deadline. After speaking with counsel for the Brown Group and the Dutruch Group, C&F "allowed these Indemnitors to provide partial updated financial statements with no representations of accuracy by April 28, 2023, so long as they would provide full, complete, and sworn financial statements with representations of accuracy by May 5, 2023."[30]

On May 1, 2023, following a request from the Brown Group, C&F agreed to draft a confidentiality agreement to facilitate the Brown Group's production of financial statements. On May 4, 2023, the Brown Group allegedly sent C&F a letter enclosing updated financial reports and advising C&F that J. Terrell Brown, Sr. and his wife allegedly had a longstanding separate property agreement in place.[31]

Also on May 4, 2023, the Dutruch Group asked C&F to draft a confidentiality agreement, and C&F did so.[32] On May 5, 2023, the Dutruch Group provided C&F with Brad Dutruch's updated personal financial statement, as well as copies of a Joint Petition for Approval to Terminate Community of Acquets and Gains and to Enter into Separate Property Regime and Partition Agreement ("Joint Petition")[33] filed by

---

[30] R. Doc. No. 3-1, at 8, *see also* R. Doc. No. 3-13.
[31] R. Doc. No. 3-1 at 8–9.
[32] *Id.* at 9.
[33] R. Doc. No. 3-14.

Brad Dutruch and his wife, Amy Dutruch, in family court for the East Baton Rouge Parish on May 4, 2023.

On May 12, 2023, C&F filed a petition to intervene in the family court case and oppose the Joint Petition.[34] On June 28, 2023, the family court issued a judgment terminating Brad and Amy Dutruch's community property regime and approving their Contract for Separate Property Regime.[35] To this Court's knowledge, C&F's revocatory action, which seeks to annul the separation agreement and raises questions of bad faith and fraud, is still pending in the family court.[36]

On May 17, 2023, the Brown Group informed[37] C&F that they intended to contest their obligations under the Indemnity Agreement. As of May 24, 2023, C&F alleged that "the other Indemnitors . . . remained silent."[38] C&F then brought this action seeking a preliminary injunction.

## II.    STANDARDS OF LAW

### a.  Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternative Motion to Strike

*i. Motion to Dismiss for Lack of Subject Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer*

---

[34] R. Doc. No. 13-8.
[35] R. Doc. No. 33-2, at 1.
[36] At a hearing held on June 27, 2023, the family court denied Brad and Amy Dutruch's dilatory exceptions of prematurity, meaning the revocatory action could proceed despite C&F not yet having obtained a judgment against Brad Dutruch. *See* R. Doc. No. 22-1, 3:19–9:11.
[37] R. Doc. No. 3-18.
[38] R. Doc. No. 3-1, at 11.

7

*Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Pursuant to Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. If a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g.*, *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### ii. Motion to Strike

Rule 12(f) allows courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "the action of striking a pleading should be sparingly used by the courts . . . It is a drastic remedy to be resorted to only when required for the purposes of justice . . . [A] motion to strike should be granted only when the pleading has no possible relation to the

controversy." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (internal quotation marks omitted)).

### b. Motion to Dismiss for *Forum Non Conveniens*

The Supreme Court has made clear that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Typically, a court conducting a *forum non conveniens* analysis must decide whether there is an available and adequate alternative forum and, if so, decide which forum is best suited for the litigation by considering a variety of private and public interest factors, while also giving deference to the plaintiff's choice of forum. *Hotel Mgmt. of New Orleans, LLC v. Gen. Star Indem. Co.*, 603 F. Supp. 3d 356 (E.D. La. 2022) (Milazzo, J.) (citing *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016)).

However, when confronted with a valid and enforceable forum-selection clause, courts perform a modified *forum non conveniens* analysis. *Matthews v. Tidewater Crewing, Ltd.*, No. 21-1530, 2023 WL 2263838, at *6 (E.D. La. Feb. 28, 2023) (Vitter, J.) (citations omitted). In this modified analysis, courts give no weight to a plaintiff's choice of forum. *Id.* (citation omitted). "Because the parties have already contractually agreed upon a given forum, a court need not determine the availability and adequacy of that chosen forum; presumably the parties themselves have already determined that the chosen forum is both adequate and available." *Id.* Courts also do

not consider any of the private interest factors and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* (citation and quotation omitted). Although courts may consider arguments about public interest factors, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (citation and quotation omitted). "The plaintiff bears a 'high burden of persuasion' in demonstrating why a court should not transfer a case to the contractually selected forum." *Id.* (citation omitted).

## III.   ANALYSIS

### a.  The Dutruch Group's Motion to Dismiss for lack of Subject Matter Jurisdiction and Alternative Motion to Strike

*i. Subject Matter Jurisdiction*

The Court first considers the threshold jurisdictional question raised in Dutruch Group's motion to dismiss for lack of subject matter jurisdiction.[39] The Dutruch Group's argument centers around a Joint Petition[40] to terminate their community property regime filed by defendant Brad Dutruch and his wife, Amy Dutruch, in family court. As discussed, C&F intervened in the family court proceedings, objecting to the separation of property as being "in fraud of [C&F's] rights under the Indemnity Agreement" and "in bad faith."[41]

---

[39] Neither the Dutruch Group nor any other defendant challenges the Court's diversity jurisdiction over C&F's claims pursuant to 28 U.S.C. § 1332. The nearly $18.5 million amount in controversy clearly exceeds $75,000. The plaintiff is a Delaware corporation with its principal place of business in New Jersey, and all defendants are residents of either Louisiana, Florida, or Texas. R. Doc. No. 22, at 12.
[40] R. Doc. No. 13-4.
[41] R. Doc. No. 13-8, ¶ 32. Again, although the family court has now issued a judgment terminating the Dutruches' community property regime, R. Doc. No. 33-2, at 1, C&F's

The Dutruch Group clarified in its reply that its "separate motion [to dismiss for lack of subject matter jurisdiction] is limited to the issues of bad faith and creditor fraud."[42] C&F mentioned "bad faith" and "fraud" once in its complaint and once in its motion for a preliminary injunction, where it suggested that "the Dutruches have acted in bad faith in order to deprive [C&F] of amounts that are due" and that "certain Indemnitors" have taken "legal steps . . . to commit fraud on [C&F's] rights."[43] According to the Dutruch Group, this Court lacks subject matter jurisdiction over those claims because Amy Dutruch never signed the Indemnity Agreement, because the Family Court has "exclusive jurisdiction" over the matter pursuant to Louisiana state law, and because Brad and Amy Dutruch filed dilatory exceptions of prematurity in the family court.

What the Dutruch Group overlooks, however, is that C&F has not asked this Court to determine whether Brad and Amy Dutruch acted in bad faith or committed fraud. Rather, C&F seeks a judgment for collateral pursuant to the Indemnity Agreement signed by Brad Dutruch. That has nothing to do with whether the partition of assets that took place in family court constituted bad faith or fraud. While C&F's few mentions of bad faith and fraud may have been somewhat gratuitous, the Court is not persuaded that it lacks subject matter jurisdiction over the question

---

revocatory action, which seeks to annul the separation agreement and raises questions of bad faith and fraud, remains pending in that court. *See* R. Doc. No. 22-1, 22:19–28:11.

[42] R. Doc. No. 33, at 5.

[43] R. Doc. No. 1, ¶¶ 88, 52. *See also* R. Doc. No. 3-1, at 9 ("The Indemnitors are now attempting to commit fraud on [C&F's] rights."), 11 ("[T]he Dutruches have acted in bad faith in order to deprive [C&F] of amounts that are due . . .").

actually at issue in this case: whether the Indemnitors, including Brad Dutruch, must collateralize C&F pursuant to the Indemnity Agreement.

The Dutruch Group's emphasis on the uncontested fact that Amy Dutruch did not sign the Indemnity Agreement and therefore owes no obligations to C&F is entirely irrelevant to this Court's subject matter jurisdiction. The question of whether C&F may seek collateral from Amy Dutruch's now-separate property in the event that this Court issues a judgment against Brad Dutruch is simply not before this Court.[44] Amy Dutruch is not even a party to this lawsuit. As C&F points out, the basic problem with the Dutruch Group's motion is that it "confuse[s] [C&F's] current request for a judgment for collateral—which is derived from the Indemnity Agreement—with [C&F's] subsequent ability to enforce that judgment against Mr. Dutruch's [former] community property [if] it is issued—a right that [C&F] intervened in the Family Court Litigation to protect, but which is not at issue in this action."[45]

Likewise, the Dutruch Group's argument that the family court has exclusive jurisdiction over this matter is misplaced. The Dutruch Group is correct that, pursuant to Louisiana law, the family court has "exclusive jurisdiction" over "the issuance of conservatory writs for the protection of community property" and "[a]ll actions for the settlement and enforcement of claims arising from matrimonial regimes or the establishment thereof." La. Stat. Ann. § 13:1401(A) (2011). However,

---

[44] *See* R. Doc. No. 22, at 16 ("To be clear, Crum & Forster do not dispute that Mrs. Dutruch is not an obligor under the Indemnity Agreement.").
[45] *Id.* at 12.

this lawsuit does not concern claims arising from the Dutruches' matrimonial regime. Rather, this case is about claims arising from the Indemnity Agreement that Brad Dutruch signed. C&F's sparse references to Brad and Amy Dutruch's partition of assets in family court allegedly having been "in bad faith" or "fraud" do not change that.

Similarly, the Dutruch Group is incorrect that dilatory exceptions of prematurity filed by Brad and Amy Dutruch in family court somehow affect this Court's jurisdiction. As explained, the issue before this Court is not—as the Dutruch Group suggests in its motion—whether C&F "can maintain the status quo as it relates to Amy's interest in the community."[46] Rather, the question is whether C&F is entitled to recover collateral from the named defendants—including Brad Dutruch—pursuant to the Indemnity Agreement. In any event, the family court has now denied these exceptions.[47] The Dutruch Group's motion to dismiss for lack of subject matter jurisdiction will therefore be denied.[48]

---

[46] R. Doc. No. 13-1, at 14.

[47] R. Doc. No. 22-1.

[48] In its reply, the Dutruch Group argues for the first time that, pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), this Court should abstain from deciding the issues of bad faith and fraud because "identical issues are framed for resolution in state and federal court." R. Doc. No. 33, at 6. As discussed, the question of whether Brad and Amy Dutruch acted in bad faith or committed fraud in partitioning their community property is not before this Court. Therefore, "identical issues" are not being framed for resolution in this Court and in family court, rendering abstention inapposite.

*ii. Motion to Strike*

The Dutruch Group also contends that, pursuant to Federal Rule of Civil Procedure 12 (f), the Court should strike from the record C&F's allegations that Brad and Amy Dutruch acted in bad faith.[49]

Rule 12(f) allows courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As C&F points out, "the action of striking a pleading should be sparingly used by the courts . . . It is a drastic remedy to be resorted to only when required for the purposes of justice . . . [A] motion to strike should be granted only when the pleading has no possible relation to the controversy." *Augustus*, 306 F.2d at 868 (quotation and citation omitted).

Although C&F's suggestions that Brad and Amy Dutruch acted in "bad faith" and committed "fraud" may not have been strictly necessary, the Court finds that they bear a possible relation to the controversy. C&F mentions bad faith and fraud only in connection with the Dutruches' decision to terminate their community property regime after more than twenty years of marriage.[50] According to C&F, the termination of this property regime could affect C&F's recovery pursuant to the Indemnity Agreement.[51] C&F argues that this constitutes "irreparable harm" supporting its request in this case for a preliminary injunction.[52] The Dutruch Group

---

[49] R. Doc. No. 13-1, at 15.
[50] R. Doc. No. 3-1, at 30.
[51] R. Doc. No. 22, at 19.
[52] *Id.* A preliminary injunction is only appropriate where, *inter alia*, there is "a substantial threat of irreparable injury if the injunction is not issued." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006) (internal quotation marks omitted).

has not satisfied the stringent requirements of Rule 12(f) and its motion to strike will therefore be denied.

### b.  Motion to Dismiss for *Forum Non Conveniens* Based on Forum-Selection Clause

#### *i. Incorporation of the Forum-Selection Clause*

The Brown Group argues that the Court should dismiss C&F's claims for *forum non conveniens* based on the forum-selection clause indisputably incorporated by reference into the contracts between the LADOTD and TL Hawk.[53] The Brown Group contends that the Indemnity Agreement "incorporates the LADOTD Contracts and the C&F Bonds"[54] because C&F's collateral demand pursuant to the Indemnity Agreement "is conditioned upon a Loss resulting from the issuance of a Bond."[55]

The Indemnity Agreement is governed by New York law.[56] Consequently, the question of whether the Indemnity Agreement incorporates the LADOTD contracts' forum-selection clause is governed by New York law. C&F correctly notes that the Indemnity Agreement does not expressly incorporate the provisions of those

---

[53] R. Doc. No. 16-1, at 6–14. Those forum-selection clause provides for litigation in the 19th Judicial District in and for the Parish of East Baton Rouge, and it has expressly incorporated by reference into the LADOTD contracts.

[54] *Id.* at 10.

[55] R. Doc. No. 32, at 1. C&F does not appear to challenge the validity of the LADOTD contracts' forum-selection clause, but asserts that this clause does not apply to claims arising from the Indemnity Agreement.

[56] R. Doc. No. 1-3, § 17. The Brown Group argues that Louisiana law "provides guidance on whether the state forum-selection clause[s] in the LADOTD Contracts apply to the Indemnity Agreement and therefore is relevant." R. Doc. No. 16-1, at 8. However, pursuant to the plain language of the Indemnity Agreement, issues related to the Indemnity Agreement—the contract at issue in this lawsuit—are governed by New York law. R. Doc. No. 1-3, § 17.

contracts,[57] and the Brown Group does not dispute that.[58] The question, then, is whether, pursuant to New York law, an Indemnity Agreement that requires collateral to protect a party from "actual or anticipated Loss" arising from certain bonded contracts impliedly incorporates the provisions of those bonded contracts.

As C&F points out, the first problem with the Brown Group's argument is that the Indemnity Agreement is itself a contract containing a forum-selection clause.[59] In Section 17 of the Indemnity Agreement, the Indemnitors agreed to "submit to the jurisdiction of the state and federal courts situated in New York, waiving any defenses of lack of personal jurisdiction and waiving venue arguments, including forum non conveniens, in any action brought by [C&F] in the State of New York."[60] Additionally, C&F "reserves the right to bring an action in any state where an Indemnitor has substantial contacts or where a project covered by a Bond subject to this Agreement is located or where a claimant brings suit against [C&F] on a bond covered by this Agreement and Indemnitors agree to submit to the jurisdiction of the courts in such state."[61]

The Brown Group does not even acknowledge Section 17, but functionally asks this Court to read it out of the Indemnity Agreement. According to the Brown Group, C&F is bound by the LADOTD contracts through the bonds to litigate *any* issues

---

[57] R. Doc. No. 21, at 11.
[58] R. Doc. No. 16-1, at 18 (recognizing that "the terms of the Indemnity Agreement do not expressly incorporate by reference the terms of the LADOTD Contracts, the Standard Specifications, or the terms of the Bonds").
[59] R. Doc. No. 21, at 10.
[60] R. Doc. No. 1-3, § 17.
[61] *Id.*

related to the LADOTD contracts—including collateralization, an issue arising from the Indemnity Agreement—in Louisiana state court.[62] But contract law, both in Louisiana and in New York, generally provides that the language of the contract is the law between the parties. *Trafficware Grp., Inc. v. Sun Indus., L.L.C.*, 749 F. App'x 247, 252 (5th Cir. 2018); *Abiele Contracting, Inc. v. New York City School Const. Auth.*, 689 N.E. 2d 864, 867 (N.Y. 1997). The Court therefore will not ignore the Indemnity Agreement's forum-selection provision.

Further, the Brown Group fails to cite any cases applying New York law suggesting that a forum-selection clause from one contract can be impliedly incorporated by reference into another under these circumstances, and this Court has found none. To the contrary, New York courts have made clear that indemnity agreements are separate contracts, and that a forum-selection clause in an indemnity agreement should be enforced even where a related agreement contains a different forum-selection clause. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Williams*, 637 N.Y.S. 2d 36 (App. Div. 1996) is particularly instructive. There, the court found that, "[w]hile the respective [notes and indemnification] agreements [were] unquestionably part of the same overall transaction, each involve[d] different parties and serve[d] a distinct purpose." *Id.* at 37. The court specifically noted that "[t]he choice of different law to be applied to each contract and the designation of a different forum for the

---

[62] *See* R. Doc. No. 16-1, at 14 (arguing that, "because the Indemnity Agreement and the Bonds at the heart of these proceedings clearly relate to TL Hawk's work under the LA 10 and LA 20 Contracts, which contain a mandatory forum-selection clause, C&F's claims should be dismissed on the grounds of *forum non conveniens*").

litigation of disputes arising out of its performance indicate[d] that the respective agreements [were] intended to be separate." *Id.* at 38.

The *National Union* court also explained that "if the choice of law and selection of forum provisions of the notes were to be adopted [into the indemnification agreement], as defendants suggest[ed], the contradictory provisions of the indemnification agreement would be rendered mere surplusage, a result that offends a fundamental principle of contract interpretation." *Id.* (citing *Ruttenberg v. Davidge Data Syss. Corp.*, 626 N.Y.S. 2d 174, 177–78 (App. Div. 1995). "According the respective contracts their appropriate place in the overall transaction," the court found that, "in exacting the indemnification agreements from defendants, plaintiff bargained for the right to proceed directly against the purchasers of the limited partnership interests as a condition of providing the bond to secure repayment of their obligations under the notes." *Id.* The court therefore enforced the forum-selection clause in the indemnification agreement with respect to the claims arising from the indemnification agreement. *Id.* at 39.

Here too, C&F's claims are brought pursuant to the Indemnity Agreement, not the bonds or LADOTD contracts. Although the Brown Group appears to be correct that C&F *is* bound by the LADOTD contracts through the language of the bonds,[63] the issue here is simply whether C&F can bring a claim for collateralization arising from the Indemnity Agreement pursuant to the Indemnity Agreement's forum-selection clause. It can.

---

[63] R. Doc. No. 32, at 2; R. Doc. No. 21, at 12.

The Brown Group cites three cases in support of its argument that the LADOTD contracts' forum-selection clauses "apply to" the Indemnity Agreement. As C&F points out, these cases are inapposite as they do not apply New York law and do not interpret forum-selection clauses in indemnity agreements comparable to the one at issue here.

The Brown Group first points to *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, a case where a court applying Louisiana law granted a motion to dismiss based on *forum non conveniens* where an obligee sued a surety claiming that the surety failed to perform under a performance bond. No. 19-0491, 2020 WL 1068160 (W.D. La. Mar. 5, 2023). The bond in question in that case expressly stated that it incorporated by reference the parties' subcontract which in turn expressly incorporated by reference the prime contract containing the mandatory forum-selection clause pursuant to Section 107.01 of the 2006 Standard Specifications. *Id.* at *3. There is no such express incorporation of the bonds or the LADOTD contracts in the Indemnity Agreement at issue here.

The Brown Group next cites *Town of Melville v. Safeco Ins. Co. of Am.* for the proposition that a contract and a performance bond must be read together. 651 So.2d 404 (La. Ct. App. 1995). In that case, the Louisiana Third Circuit Court of Appeal noted that the contract at issue "provide[d] in part that the (performance) bond shall provide for the payment of reasonable attorney's fees for the enforcement of contract proceedings." *Id.* at 408. Based on the contract's language, the court determined that

19

the contract and bond had to be "read together," so the surety was contractually obligated to pay attorney's fees. *Id.*

Importantly, the determination of whether contracts should be construed together turns on what those contracts actually say. Unlike the contracts at issue in *Town of Melville*, the Indemnity Agreement in this case includes no language that warrants applying another contract's forum-selection clause to it. In fact, as discussed, the Indemnity Agreement includes its own forum-selection clause.

Similarly, the Brown Group's reliance on *Matthews v. Tidewater Crewing, Ltd.* is misplaced. No. 21-1530, 2023 WL 2263838 (E.D. La. Feb. 28, 2023) (Vitter, J.). In that case, the court determined that a forum-selection clause in an employment contract required an employee to bring claims related to alleged exposure to chemicals in the High Court of Justice in London. Although the Brown Group is correct that the word "shall" in a forum-selection clause typically renders that clause mandatory, that has no bearing on whether the LADOTD contracts' forum-selection clause is incorporated in the Indemnity Agreement.

Because the LADOTD contracts' forum-selection clause is not incorporated into the Indemnity Agreement and the Indemnity Agreement itself contains a forum-selection clause permitting C&F to bring its claims in this forum, the Court will not dismiss C&F's claims for *forum non conveniens* on this ground.

### ii. Direct Benefits Estoppel

Alternatively, the Brown Group argues that the Court should grant its motion to dismiss for *forum non conveniens* because C&F is bound to the forum-selection

clause in the LADOTD contracts through the doctrine of "direct-benefits estoppel."[64] Although this doctrine is often associated with arbitration clauses, courts have also applied it to bind parties to forum-selection clauses in contracts they have not signed. *See, e.g.*, *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518–20 (5th Cir. 2006); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (noting that an arbitration clause is "a specialized kind of forum-selection clause").

The direct-benefits estoppel doctrine "holds a non-signatory to a clause in a contract if it 'knowingly exploits the agreement' containing the clause." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003)). A non-signatory may be bound either "by knowingly seeking and obtaining 'direct benefits' from the contract" or "by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.* (quoting *Noble Drilling Servs., Inc. v. Certex USA Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)). The Brown Group argues that C&F should be bound by the forum-selection clause in the LADOTD contracts because its claims "must be determined by reference to the LADOTD contracts."[65]

C&F counters that the direct-benefits estoppel doctrine does not apply for two reasons. First, the Indemnity Agreement is governed by New York law and "there is no indication that, under New York law, [the direct-benefits estoppel doctrine] should apply as to the . . . indemnitors."[66] Second, C&F's claims in this lawsuit are "expressly

---

[64] R. Doc. No. 16-1, at 15–18.
[65] R. Doc. No. 16-1, at 17.
[66] R. Doc. No. 21, at 15.

authorized and derived from the unambiguous language of the Indemnity Agreement," which "entitles [C&F] to collateral and indemnity to protect it from Loss without any requirement that the claims giving rise to that Loss be fully determined or adjudicated."[67]

## A. Choice of Law

The relevant choice-of-law analysis is complex. At issue is whether, as a non-signatory to the LADOTD contracts, C&F is bound by the forum-selection clause in those contracts pursuant to the direct-benefits estoppel doctrine. The Brown Group initially appeared to suggest that this question was governed by federal law,[68] but argued in its reply that the question was in fact governed by Louisiana law because "any interpretation of the LADOTD Contracts or the Bonds must be interpreted under Louisiana law."[69] C&F argues that New York law governs the question because the parties' Indemnity Agreement is governed by New York law.[70]

The Fifth Circuit has previously recognized in the context of arbitration agreements that "it is often an uncertain question" whether state or federal law governs the determination of whether a party should be compelled to arbitrate its claims. *Wash. Mut. Fin. Grp., L.L.C. v. Bailey*, 364 F.3d 260, 267 n.6 (5th Cir. 2004). Because the question of whether an arbitration clause (and by extension a forum-selection clause) binds a non-signatory "presents no state law question of contract

---

[67] *Id.* at 16.
[68] *See* R. Doc. No. 16-1, at 15-17 (repeatedly citing *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283 (5th Cir. 2015)).
[69] R. Doc. No. 32, at 4 n.7.
[70] R. Doc. No. 21, at 15.

formation or validity," the Fifth Circuit found it "appropriate to apply the doctrine of equitable estoppel as outlined by federal courts without reference to [state] law." *Id.* (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (internal quotation marks omitted).[71]

In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), "the Supreme Court clarified that while the [Federal Arbitration Act] creates substantive federal law regarding the enforceability of arbitration agreements, 'background principles of state contract law' control the interpretation of the scope of such agreements, 'including the question of who is bound by them.'" *Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 561, 579–81 (W.D. Tex. 2014) (quoting *Carlisle*, 556 U.S. at 630). Since *Carlisle*, some district courts have applied state law to resolve this question. *Id.* (collecting cases). The Fifth Circuit has sometimes applied federal law, *id.* (citing *Griffin v. ABN Amro Mortg. Grp., Inc.*, 378 F. App'x 437, 439–40 (5th Cir. 2010)), and other times appeared to find the question unsettled. *Id.* (citing *Graves v. BP America, Inc.*, 568 F.3d 221, 223 (5th Cir. 2009)).

"Generally whether state or federal law applies will have no effect on the outcome, since state and federal law both utilize background principles of contract and agency law, and those principles are typically similar across jurisdictions." *Harland Clarke Holdings Corp.*, 997 F. Supp. at 580. Finding no significant difference

---

[71] *But see Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1074–75 (5th Cir. 2002) (applying Texas law to determine whether a non-signatory was bound by an arbitration agreement).

among New York, Louisiana, and federal law with respect to this question,[72] the Court concludes it "need not decide which law controls." *Id.* at 581.

B. Application of Direct-Benefits Estoppel Doctrine

Whether C&F is bound by the LADOTD contracts' forum-selection clause through the doctrine of direct-benefits estoppel turns on whether C&F "assert[s] claims that must be determined by reference to" the LADOTD contracts.[73] *Bridas*, 345 F.3d at 361–62 (citation omitted). The Brown Group argues that C&F's claims of collateral "must be determined by reference to the LADOTD Contracts."[74] C&F instead argues that its claims for collateral and indemnity to protect it from "Loss" can be adjudicated "without any requirement that the claims giving rise to that Loss be fully determined or adjudicated" and that C&F's "rights under the Indemnity Agreement are not premised on the terms or conditions of the contracts it bonded."[75]

---

[72] Confronted with the question of whether it should compel a non-signatory to arbitrate, the New York Court of Appeals noted that "some New York courts have relied on the direct benefits estoppel theory, derived from federal case law, to abrogate the general rule against binding nonsignatories." *Belzberg v. Verus Investments Holdings Inc.*, 999 N.Y.S.2d 685, 688 (N.Y. 2013) (citations omitted). The New York Court of Appeals relied heavily on federal cases in its analysis and ultimately concluded that the non-signatory in the case at bar had not derived a direct benefit from the agreement at issue. *Id.* at 691. Likewise, the Louisiana Supreme Court has acknowledged the direct-benefits estoppel doctrine, calling it a "jurisprudentially created type of estoppel" and "an equitable remedy." *Donelon v. Shilling*, 340 So.3d 786 (La. 2020); *see also Trader's Mart, Inc. v. AOS, Inc.*, 268 So.3d 420, 428 (La. App. 2019) (relying on federal case law to explain direct-benefits estoppel).

[73] The Brown Group mentions in a single footnote that "C&F also arguably obtained direct benefits from the Contracts as the C&F bond premiums were determined by the value of the Contracts." R. Doc. No. 16-1, at 17 n.104. The Brown Group provides no support for this position, and no other party mentions this point.

[74] R. Doc. No. 16-1, at 17.

[75] R. Doc. No. 21, at 16.

The Brown Group's argument is based on the text of the Indemnity Agreement. Section 6 of that Agreement provides for collateral "to protect [C&F] from "actual or anticipated Loss" and Section 2 defines "Loss" as "all demands, liabilities, losses, costs, damages, and expenses of any kind or nature . . . which [C&F] incurs, or to which it may be exposed *in connection with any Bond* or this Agreement."[76] According to the Brown Group, since C&F's collateral demand is "conditioned upon Loss resulting from the issuance of a Bond, C&F's claims must be determined by reference to the underlying [LADOTD] Contracts."[77]

The direct-benefits estoppel doctrine typically applies in cases where a non-signatory sues a signatory and the non-signatory's claims are premised in part on the agreement. *Bridas*, 345 F.3d at 361-62. C&F's claims in the instant action are premised on the parties' separate Indemnity Agreement—which contains its own forum-selection clause—not the bonds or the LADOTD contracts. C&F has therefore not "exploited" the LADOTD contracts "to the degree that the cases that consider applying [direct-benefits] estoppel require." *Id.* at 362. Indeed, "[a]s plaintiff, [C&F] is not required to base its claims on [the bonds or LADOTD contracts] and can . . . disclaim any reliance thereupon." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 474 (5th Cir. 2010). Although the Indemnity Agreement references the bonds, C&F has framed its claims as claims arising from the Indemnity Agreement

---

[76] R. Doc. No. 1-3, §§ 6, 2 (emphasis added).
[77] R. Doc. No. 16-1, at 18.

and not from the bonds or LADOTD contracts. It has also expressly disclaimed reliance on the terms or conditions of the contracts it bonded.[78]

The Court therefore concludes that C&F is not bound by the forum-selection clause in the LADOTD contracts to litigate its claims in the 19th Judicial District Court in and for the Parish of East Baton Rouge. However, if any claims C&F asserts later reveal themselves to be premised on the terms of the bonds or LADOTD contracts, the Court reserves the right to dismiss those claims pursuant to the doctrine of direct-benefits estoppel.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss for lack of subject matter jurisdiction,[79] the motion to strike,[80] and the motions to dismiss based on *forum non conveniens*[81] are **DENIED**.

It is **FURTHER ORDERED** that any responses to C&F's motion for a preliminary injunction must be filed no later than **AUGUST 23, 2023**. Any replies must be filed no later than **AUGUST 30, 2023**.

New Orleans, Louisiana, August 9, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[78] R. Doc. No. 21, at 17.
[79] R. Doc. No. 13.
[80] *Id.*
[81] *Id.* and R. Doc. No. 16.